UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRIS LENNELL DAVIS,

                Petitioner,                Case No. 2:21-cv-10939
                                                            Hon. Victoria A. Roberts

MIKE BROWN,

                Respondent.
_____/

**OPINION AND ORDER (1) GRANTING RESPONDENT'S MOTION TO DISMISS [ECF No. 12], (2) DENYING PETITIONER'S PENDING MOTIONS [ECF Nos. 11, 15], (3) DENYING CERTIFICATE OF APPEALABILITY, AND (4) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Chris Lennell Davis, ("Petitioner"), filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2001 Oakland Circuit Court jury trial convictions of one count of armed robbery, MICH. COMP. LAWS § 750.529, and one count of first-degree home invasion. MICH. COMP. LAWS § 750.110a. Petitioner is serving a controlling sentence of 30-50 years for the armed robbery conviction and 10-30 years for the home invasion conviction.

The matter is before the Court on Respondent's motion to dismiss the petition as untimely filed. (ECF No. 12.) Petitioner filed a reply to the motion. Petitioner does not contest that the statute of limitations expired, but he asserts that he is nevertheless entitled to habeas review because he is actually innocent. (ECF No. 14.) Petitioner also moves for an evidentiary hearing and for release on bond. (ECF Nos. 11 and 15.)

The Court will grant Respondent's motion and dismiss the case because Petitioner failed to comply with the one-year limitations period under 28 U.S.C. §2244(d), and Petitioner fails to demonstrate his actual innocence. The Court will also deny Petitioner's pending motions, deny a certificate of appealability, and deny permission to proceed on appeal in forma pauperis.

## I. Background

The charges against Petitioner arose from the robbery of Cynthia Crandall in her Waterford Township home.

Crandall testified at trial that on the morning of July 25, 2000, she went to a pawn shop to buy and sell jewelry. Crandall, an avid jewelry collector, was wearing a number of rings. Another man came into the store to pawn a gold chain. He was fingerprinted and gave proof of identification to complete the transaction. The man remarked on the quantity of Crandall's diamonds and gold. The identification and fingerprints were later matched to Petitioner.

When Crandall arrived home later that day, she was ambushed by two men. They held her at gunpoint, threatened to kill her, and then left with her jewelry collection.

Relevant to Petitioner's actual innocence claim, Crandall ran into the parking lot of a bank located next to her house. She saw two man get into a tan car and drive away, and she presumed that they were the two men who had robbed her. As will be discussed below, part of this was captured on the bank's security video system.

Police later determined that a tan car was registered to Petitioner. The next day, Petitioner was pulled over in his tan car and was arrested. A bag containing Crandall's stolen jewelry was found under the driver's seat. Crandall later failed to identify Petitioner at a police line-up.

Based on this evidence, Petitioner was convicted and sentenced as indicated above. Petitioner then filed an appeal of right in the Michigan Court of Appeals. Apart from his appellate counsel's brief, Petitioner filed his own pro se supplemental brief which claimed, among other things, that his trial counsel was ineffective for failing to "procure the videotape of the surveillance of the bank's parking lot." (See ECF No. 13-6, PageID.845.)

On November 22, 2002, the Michigan Court of Appeals affirmed in an unpublished opinion. *People v. Davis*, No. 235368, 2002 WL 31938943 (Mich. Ct. App. Nov. 22, 2002). Petitioner did not attempt to appeal this decision to the Michigan Supreme Court. (ECF No. 13-16.)

On April 27, 2004, Petitioner filed a motion for relief from judgment in the trial court. Among the claims raised, Petitioner asserted: (1) the trial court erred in allowing admission of photographs instead of the actual bank video, and (2) the prosecution suppressed the videotape which would have demonstrated Petitioner's innocence. (ECF No. 13-6, PageID.845.) The trial court denied the motion by opinion dated August 5, 2004. (ECF No. 13-7.) Petitioner did not appeal this decision.

Over thirteen years later, on November 28, 2017, Petitioner filed a second motion for relief from judgment in the trial court. (ECF No. 13-8.) Among other things, Petitioner asserted that newly discovered evidence in the form of two pages from a police report, revealed that: (1) police had possession of the bank videotape before trial, (2) police showed the video to Crandall, and (3) police then removed the video from evidence and used the two photos instead. (Id., PageID.857-58.) Petitioner inferred that because the video was not presented at trial, it likely possessed exculpatory content. (Id.)

The trial court denied the motion, finding that because Petitioner was aware of the existence of the videotape at the time of trial, direct appeal, and his first post-conviction motion, the successive motion was not based on newly discovered evidence and was prohibited by Michigan Court Rule 6.502(G)(2).The court likewise rejected the allegation that Petitioner did not possess the police report at the time of trial. (ECF No. 13-10.)

3

Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals. On September 19, 2018, the Michigan Court of Appeals denied the application because Petitioner "failed to establish that the trial court erred in denying the motion for relief from judgment." (ECF No. 13-12.) Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, but on July 2, 2019, it was denied by standard order. *People v. Davis*, 929 N.W.2d 329 (Mich. 2019)(Table).

Petitioner attempted to renew his post-conviction proceeding in the trial court in November 2019, but the trial court rejected Petitioner's pleadings as prohibited by Rule 6.502(G)(2). (ECF No. 13-17.)

Petitioner signed and dated his federal habeas petition about one and one-half years later on April 14, 2021.

## II. Standard of Review

Though Respondent styles its motion as a motion to dismiss, it is properly construed as one of summary judgment because the motion and the record before the Court include documents outside of the pleadings. See e.g., *Anderson v. Shane Place*, 2017 U.S. Dist. LEXIS 65670, *6, 2017 WL 1549763 (E.D. Mich. May 1, 2017).

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In considering a motion for summary judgment, the Court will construe all facts in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). There are no genuine issues of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id*. If the movant carries its burden of showing an absence of evidence to support a claim, then the non-movant must demonstrate by affidavits, depositions,

4

answers to interrogatories and admissions that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-325 (1986). This standard of review may be applied to habeas proceedings. See *Redmond v. Jackson*, 295 F. Supp. 2d 767, 770 (E.D. Mich. 2003).

### III. Discussion

There is a one-year statute of limitation for petitions filed by state prisoners seeking federal habeas relief. 28 U.S.C. § 2244(d)(1). The limitation runs from one of four specified dates, usually either the day when the judgment becomes final by the conclusion of direct review or the day when the time for seeking such review expires. § 2244(d)(1)(A). The limitation period is tolled while "a properly filed application for state post-conviction or other collateral review ... is pending." § 2244(d)(2).

Petitioner's conviction became final in early 2003, over a year before he first filed for state post-conviction review. He then waited over thirteen years to file his second state post-conviction review proceeding, and he then waited over one additional year to file his federal petition after the trial court rejected his last state court filing. Petitioner acknowledges as much, and he does not contest that the one-year deadline expired before he filed his petition. Petitioner asserts, however, that he is nevertheless entitled to review of his petition because the allegedly suppressed police report, which he claims he first discovered in 2017, demonstrates his actual innocence. (ECF No. 14, PageID.1835-41.)

Both the United States Supreme Court and the United States Court of Appeals for the Sixth Circuit have held that a credible claim of actual innocence may equitably toll the one-year statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Souter v. Jones*, 395 F.3d 577, 588-90 (6th Cir. 2005). As explained in *Souter*, to support a claim of actual innocence, a petitioner in a collateral proceeding "must demonstrate that, in light of all the evidence, it is more likely than

5

not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)); *see also House v. Bell*, 547 U.S. 518, 537-39 (2006). A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. In keeping with Supreme Court authority, the Sixth Circuit has recognized that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 321).

Petitioner fails to demonstrate his actual innocence under this standard. As an initial matter, the Court notes the subtlety with which Petitioner attempts to navigate the procedural posture of his claim. Petitioner acknowledges that he cannot rely on the bank video *itself* as constituting the new exculpatory evidence. Both Petitioner and his counsel were aware of the video at the time of trial, on direct appeal, and when Petitioner filed his first state post-conviction proceeding. Petitioner even raised claims about the failure of the prosecutor and his counsel to use the video at trial in those proceedings.

Because he cannot point to the video itself, Petitioner asserts that in 2017, after a FOIA request made by a private investigator, he discovered the existence of two pages of a police report that he asserts were never provided to the defense. He asserts that had the full report been disclosed to the defense, it would have provided the onus for defense counsel to obtain and use the video at trial rather than allow the prosecutor to rely on the two photographs taken from the video.

Petitioner asserts that the content of the police report corroborates his assertion that the video contains exculpatory information.

First, the record does not support Petitioner's contention that the prosecutor did not provide the full three-page police report to the defense prior to trial. It is clear based on defense counsel's cross-examination of Crandall that he was aware of her first statement to police made on the day of the incident, the contents of which appear on the second page of the report. (ECF No. 13-3, PageID.627, 629, 634.)

Furthermore, in denying Petitioner's second motion for relief from judgment, the trial court made a factual finding that Petitioner had the full police report at the time of trial:

> [T]he record circumstantially reflects that it was [turned over] as the police report contained the complaint/victim's first formal statement to police, defense counsel questioning the complainant about statements she made to the police that were in the report, the prosecutor questioned the complainant about her statements to police, and the prosecutor's records reflect that discovery was turned over to the defense on August 11, 2000.

(ECF No. 13-10, PageID.982.)

This factual finding is presumed to be correct, and Petitioner does not proffer clear and convincing evidence to show that it is incorrect. 28 U.S.C. § 2254(e)(1).

But even assuming the second and third pages of the report were not provided to the defense, they do not establish Petitioner's innocence. The relevant portion of the police report states:

> Writer [Sgt. Osika] and Detective Ryner observed the video tape from the TCF Bank and observed Crandall running after a Pontiac 6000 which was leaving the lot towards Crescent Lk. Rd. Crandall was shown this clip and stated it appeared to be the responsible vehicle. Crandall also stated as she pursued the vehicle no other vehicles were observed to be leaving the lot and the video tape confirmed that observation. The TCF video showed the tan Pontiac 6000 to be leaving the lot at 12:28:27 and Crandall following it at 12:28:41. Ofc. Tippen came to the TCF Bank and took still photos of the video and then removed the video tape for evidence.

(ECF No. 1, PageID.46-47.)

Contrary to Petitioner's assertion, nothing in the report is exculpatory or suggests that the video contained exculpatory information. First, the fact that the report indicates that the police observed a video and not just still photos is not new and was a fact presented at trial. Detective Osika testified at trial that he viewed the video at the bank. (ECF 13-3, PageID.708.) Next, the report merely indicates that the video confirmed Crandall's statement (used by defense counsel on cross-examination) that she pursued a tan car on foot that drove out of the lot. This statement is in accord with the evidence presented at trial. The report does not indicate that the video also depicts an individual(s) getting into or out of the car, or that the occupant(s) of the car were otherwise visible or identifiable. Indeed, the best quality still photo of the car suggests that no identification—one way or the other—would have been possible. (Photo, ECF No. 13-9, PageID.947.) That is, nothing in the report suggests exculpatory information was contained in the video.

Petitioner counters this by setting up a false dichotomy. Petitioner reasons that if the video depicted him, then surely the prosecutor would have presented it at trial. He then makes the unwarranted inference that because the video was not presented at trial the opposite must be true: the video must depict someone other than him. (ECF No. 14, PageID.1835, 1840.) But it is simply not true that if the video did not contain an identifiable image of him that it must contain an identifiable image of someone else. The inference completely ignores the possibility that the video does not contain an identifiable image of any of the occupant(s) of the car. Rather, it merely depicted the car itself driving away and Crandall pursuing it on foot. Indeed, that is all the police report indicates the video showed, and those are the two features of the photographs taken from it. (ECF No. 1, PageID.41-42.) The more natural inference to draw from the failure of either party to present the video at trial is that the video did not contain additional probative evidence beyond

what the photos showed – one way or the other. The failure of the prosecutor or defense counsel to present the video—whether considered by itself or taken together with the contents of the police report—is not suggestive of any wrongdoing.

The police report therefore does not constitute newly discovered evidence that demonstrates Petitioner's actual innocence. The information in the report does not put any new light on the bank video that demonstrates that it is more likely than not that no reasonable juror would have convicted Petitioner. *Bousley*, 523 U.S. at 623; *Schlup*, 513 U.S. at 327-28.

Furthermore, the Court underscores the fact that the prosecutor presented overwhelming circumstantial evidence of Petitioner's guilt at trial. Petitioner was fingerprinted and presented his own proof of identification at the pawn shop when he commented on the quantity of Crandall's jewelry. (ECF No. 13-3, PageID.646-49.) A tan Pontiac 6000 was registered in his name, which was a vehicle consistent with Crandall's observations and the photo taken from the bank of the getaway car used. (Id., PageID.707-08, 714-15.) And most damning, Petitioner was arrested the next day in that same tan vehicle with Crandall's jewelry stuffed in a bag under the driver's seat. (Id., PageID.674, 678-79, 683-84, 709.) In light of the overwhelming evidence presented at trial of Petitioner's identity as one of the perpetrators, the Court concludes that Petitioner has not demonstrated his actual innocence in light of the content of the police report.

Accordingly, the Court will grant Respondent's motion for summary judgment and dismiss the petition because it was filed after expiration of the one-year statute of limitations, and Petitioner has failed to demonstrate his actual innocence to excuse the untimely filing.

### IV. Petitioner's Pending Motions

Petitioner filed a motion for an evidentiary hearing. The motion does not disclose what evidence Petitioner wishes to produce at a hearing other than his own testimony. (ECF No. 11,

PageID.456-57.) In response to Petitioner's 2017 second motion for relief from judgment, the prosecutor indicated that its investigation revealed that the 2000 video tape no longer existed, and that assertion was accepted by the state trial court. (ECF No. 13-9, PageID.943; ECF No.13-10, PageID.989.) Petitioner seems to acknowledge that the video no longer exists. (See Petitioner's Reply, ECF No. 11, PageID.454, "The withholding and subsequent destruction of the TCF Bank video violated Petitioner's due process rights.") Petitioner therefore fails to adequately explain how an evidentiary hearing might further his claim. *Bell v. Jarvis*, 236 F.3d 149 (4th Cir. 2000); *Valerio v. Crawford*, 306 F.3d 742 (9th Cir. 2002) (en banc) ("In the absence of anything more concrete than speculation—present in every case—that new evidence might exist, we decline to order an evidentiary hearing on Defendant's [] claim."). The motion for an evidentiary hearing is therefore denied.

Finally, because the petition is being dismissed under the statute of limitations, Petitioner's motion for release on bond is denied as moot. (ECF No. 15.)

## V. Certificate of Appealability

Before Petitioner may appeal, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling. *Id*. Having undertaken the requisite review, the Court concludes that jurists of reason could not debate the Court's procedural ruling. A certificate of appealability will therefore be denied.

Leave to appeal in forma pauperis is denied because an appeal of this order could not be taken in good faith. 18 U.S.C. § 1915(a)(3).

### VI. Order

For the foregoing reasons, **IT IS ORDERED** that Respondent's motion for summary judgment is **GRANTED**, and the petition is **DISMISSED.**

**IT IS FURTHER ORDERED** that Petitioner's motion for an evidentiary hearing and release on bond are **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability and permission for leave to appeal in forma pauperis are **DENIED.**

s/ Victoria A. Roberts
Hon. Victoria A. Roberts
United States District Judge

Dated: 1/6/2022